IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD BILAN,                    )   Civ. No. 05-00690 ACK-KSC
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )
CITY AND COUNTY OF HONOLULU;      )
LESTER K.C. CHANG, in his         )
official capacity as Director,    )
Department of Parks and           )
Recreation, City and County       )
of Honolulu,                      )
                                  )
          Defendants.             )
_____   )

**ORDER GRANTING DEFENDANT CHANG'S MOTION FOR JUDGMENT ON THE
PLEADINGS; GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S
MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S
RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

On October 28, 2005, Richard Bilan ("Plaintiff") filed

a Complaint for Declaratory and Injunctive Relief and Damages

("Complaint") against the City and County of Honolulu (the

"City") and Lester K.C. Chang in his official capacity as

Director of the Department of Parks and Recreation for the City

(collectively "Defendants"). Defendants filed their Answer to

Plaintiff's Complaint on November 23, 2005.

On February 24, 2006, Plaintiff filed a Motion for

Partial Summary Judgment and a supporting Concise Statement,

seeking summary judgment on the first cause of action alleged in the Complaint.  On April 20, 2006, Defendants filed an Opposition to the Motion, which incorporated by reference a Concise Statement and exhibits previously filed by Defendants.  On May 4, 2006, the parties submitted supplemental briefings at the Court's request.  On May 8, 2006, the Court held a hearing on the Plaintiff's motion.

After the hearing, the Court issued an Order denying Plaintiff's Motion for Partial Summary Judgment without prejudice ("May 8 Order").  In the Order, the Court directed Plaintiff to inform the Court as to whether the United Public Workers Union ("Union") was pursuing arbitration of his grievance.  May 8 Order at 9.  Plaintiff was then granted leave to file a renewed motion for summary judgment if he determined that subject matter jurisdiction existed.  Id.  On the other hand, if it appeared that no subject matter jurisdiction existed, then Defendants were encouraged to file a motion to dismiss.  Id.  On June 14, 2006, Plaintiff submitted a written statement from the Union indicating that it was not pursuing arbitration of his grievance.

The parties have filed three dispositive motions since the Court issued the May 8 Order.  First, Plaintiff filed a renewed Motion for Partial Summary Judgment on September 5, 2006 ("Plaintiff's Motion").  Plaintiff filed a Separate and Concise Statement of Facts in support of his Motion.  Defendants filed a

joint Opposition to Plaintiff's Motion ("Plaintiff's Motion Opposition") and Separate and Concise Statement supporting the Opposition on October 12, 2006.

Second, the City filed a Motion for Partial Summary Judgment on September 6, 2006 ("City's Motion") along with a Separate and Concise Statement of Facts in support of its Motion. Plaintiff filed an Opposition to the City's Motion ("City's Motion Opposition") and a Separate and Concise Statement supporting the Opposition on October 12, 2006.  Then, the City filed a Reply to Plaintiff's Opposition ("City's Motion Reply") on October 19, 2006.

Third, on September 7, 2006, Defendant Chang filed a Motion for Judgment on the Pleadings ("Chang's Motion"). Plaintiff filed an Opposition to Chang's Motion on October 12, 2006 ("Chang's Motion Opposition").  On October 19, 2006, Chang filed a Reply to Plaintiff's Opposition ("Chang's Motion Reply").

The parties appeared before this Court to address all three motions on October 30, 2006.

## FACTUAL BACKGROUND[1]

The subject of this action are the events surrounding Plaintiff's employment and subsequent termination from the position of groundskeeper with the Department of Parks and

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

3

Recreation for the City and County of Honolulu.  Plaintiff was hired as a groundskeeper on April 15, 2000.  Complaint ¶ 9.  At the time he was hired, Plaintiff was afforded contractual rights in accordance with a Collective Bargaining Agreement ("CBA") as a member of the United Public Workers Union.  Complaint ¶ 10.   The pertinent CBA was in effect from July 1, 2003 through June 30, 2005.  Id.  When Plaintiff was ultimately terminated on June 1, 2005, he had been temporarily assigned to the position of tractor mower operator and earned $2,280.30 a month.  Complaint ¶ 9.

On or about February 15, 2005, one of Plaintiff's co-workers, Wendell Buenaventura, filed a complaint with the City alleging that Plaintiff intentionally "bumped" him at the entrance of the restroom at the Kapiolani Regional Park Base. Plaintiff's Motion, Ex. 1.  Buenaventura also allegedly complained that Plaintiff had harassed him over the preceding three months.  Complaint ¶ 11.  Plaintiff was notified of the complaint in a memorandum from Mike Smith, the Kapiolani Regional Park Manager, in which he was instructed to appear for an investigatory interview on February 25, 2005.[2]  Plaintiff's Motion, Ex. 1.  Per the request of Plaintiff's union representative, the investigatory interview was rescheduled to March 8, 2005.  Plaintiff's Motion, Ex. 2.

---

[2] The memorandum is improperly dated January 5, 2005, and was actually prepared on February 16, 2005.  Fay Yamamoto Supplemental Declaration ¶ 18.

4

On March 16, 2005, Smith wrote to Plaintiff to notify him that he was being temporarily reassigned pending an investigation for workplace violence.  Plaintiff's Motion, Ex. 3. The letter alleged that Plaintiff threatened a coworker, retaliated against a witness, and in doing so created a hostile working environment.  <u>Id.</u>  The letter also informed Plaintiff that he had the right to contact his business agent if he desired continued representation in the matter.  <u>Id.</u>

In the next documented communication between the parties, Director Chang sent a letter to Plaintiff on May 4, 2005 informing him that he had been accused of shouting "Shut Up!" and intentionally bumping an employee in violation of the CBA. Plaintiff's Motion, Ex. 4.  Pursuant to the CBA, Chang informed Plaintiff of his right to respond to the accusations either in writing or at a "pre-determination hearing."  <u>Id.</u>  He was also warned, that in the absence of a response, the City would initiate a dismissal action pursuant to Section 11 of the CBA. <u>Id.</u>

In response to Chang's letter, Plaintiff and his union representative, Petrocelli Kesi ("Kesi"), met with Gary B. Cabato, an Executive Assistant II for the Department of Parks and Recreation, for a pre-determination hearing on May 13, 2005.  <u>See</u> Plaintiff's Motion, Ex. 5.  Three days later, Chang again wrote to Plaintiff to inform him that the explanation he offered at the

meeting with Cabato was insufficient to express extenuation or mitigation.  Id.  Consequently, the City placed Plaintiff on leave without pay as of May 23, 2005, and discharged him effective June 1, 2005.  Id.

Plaintiff filed a Step 1 Grievance through his Union on May 31, 2005 and requested a meeting.  In the grievance, Plaintiff alleged that the City violated Sections 1, 11, 14, and 58 of the CBA by (1) failing to consult with the Union regarding changes to workplace procedures; (2) failing to provide an opportunity to respond to the charges prior to termination; (3) ignoring Plaintiff's constitutional rights; and (4) failing to consider all available evidence that supported him.  Plaintiff's Motion Opposition, Ex. C.  A hearing on the Step 1 Grievance was held on June 16, 2005.  Plaintiff's Motion Opposition, Ex. D; Yamamoto Declaration ¶ 10.  The next day, John Blewitt, Jr., Administrative Services Officer III for the Department of Parks and Recreation, wrote to Kesi denying the grievance, having determined that no violations of the CBA occurred.  Plaintiff's Motion Opposition, Ex. D.

In response, Kesi filed a Step 2 Grievance on June 21, 2005, and requested another meeting.  Plaintiff's Motion Opposition, Ex. E.  The Step 2 Grievance meeting took place on July 8, 2005.  Yamamoto Declaration ¶ 13.  On July 19, 2005, Ken Nakamatsu, the Director of Human Resources for the City, wrote

Kesi to inform him that he had determined no violation of the CBA
occurred when the City terminated Plaintiff.  Plaintiff's Motion,
Ex. 7.  At this point, the Union was empowered by the CBA to
determine whether to pursue arbitration of the Plaintiff's
grievance.

On September 8, 2005,[3] Dayton Nakanelua, the State
Director of the Union, wrote to notify the City that the Union
would review the merits of Plaintiff's grievance to determine
whether or not to pursue arbitration.  Plaintiff's Motion
Opposition, Ex. G.  Apparently, the Union completed this review
within the same day, as Nakanelua also wrote to Plaintiff on
September 8, 2005 to inform him that the Union would not pursue
his grievance any further.  Plaintiff's Motion, Ex. 8.  Almost
ten months later, on June 7, 2006, Nakanelua wrote to the City
again, this time to confirm that the Union was not pursuing
Plaintiff's grievance.  Plaintiff's Motion Opposition, Ex. H.

## STANDARD

### I.   Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)")
states, "[a]fter the pleadings are closed but within such time as
not to delay the trial, any party may move for judgment on the

---

[3] The date at the top of the letter was incorrectly entered
as 2004 instead of 2005.  Yamamoto Declaration ¶ 15.  The
"RECEIVED" date stamp indicates the letter was actually received
by Defendants on September 12, 2005.

pleadings."  If procedural defects are asserted in a Rule 12(c) motion, the district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), 12(b)(6), 12(b)(7), or 12(f).  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004).  Thus, "if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." Id.; see also Collins v. Bolton, 287 F. Supp. 393, 396 (N.D. Ill. 1968) ("Since defendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion [for judgment on the pleadings] as one to dismiss for lack of subject matter jurisdiction."); Engleson v. Burlington Northern Railroad Co., 1988 WL 332944 *2 n.1 (D. Mont. 1988) ("Because the motion [for judgment on the pleadings] raises only subject matter jurisdictional issues, the court treats the motion as one requesting dismissal for lack of subject matter jurisdiction").

When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion.  See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon

8

v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003).  As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'"  McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)).  "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff."  McGlinchy, 845 F.2d at 810.

## II.  **Motion for Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."[4]  Fed. R. Civ. P. 56(c).

        "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5]  <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted).  Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

        The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district

---

        [4] Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider when determining whether a material issue of fact exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral argument are not evidence and do not create issues of fact.  <u>See British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978).

        [5] Disputes as to immaterial issues of fact do "not preclude summary judgment."  <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804 F.2d 1472, 1478 (9th Cir. 1986).

court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the Court's role is not to make credibility assessments. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Id. at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence" in support. T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential

11

to his case when that party will ultimately bear the burden of proof at trial.[6]  See Celotex, 477 U.S. at 322.

## **DISCUSSION**

The Complaint alleges that Plaintiff was formerly employed by the City as a groundskeeper, and that on June 1, 2005, the City discharged Plaintiff from employment without first giving him "a hearing or due process under federal and Hawaii State law."  See Complaint at 2.  The Complaint alleges five causes of action: (1) violation of 42 U.S.C. § 1983 and the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, (2) termination in violation of public policy, (3) promissory estoppel, (4) breach of express contract, and (5) breach of implied contract.  Id. at 8-10.

The Court will first address Defendant Chang's Motion for Judgment on the Pleadings.  The Court will then consider whether summary judgment should be granted for either Plaintiff

---

[6] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

or the City as to Count 1 - Due Process.  Finally, the Court will turn to Plaintiff's Motion as it relates to Count 4 - Breach of Express Contract and Count 5 - Breach of Implied Contract. Neither Plaintiff nor the City has moved for summary judgment on Count 2 - Public Policy, or Count 3 - Promissory Estoppel, therefore the Court need not address either count at this time.

## I.   Defendant Chang's Motion for Judgment on the Pleadings

Chang moves the Court to enter judgment on the pleadings in his favor on all counts alleged in the Complaint, based on his contention that the claims against him and the City are duplicative.  Chang's Motion at 5.  It is clear from the Complaint that Chang is sued in his official capacity as Director of the Department of Parks and Recreation for the City and County of Honolulu, and not as an individual.  Complaint ¶ 4.

The Supreme Court established that it is not necessary to file duplicative suits against a government unit and an individual in his official capacity.  Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099 (1985).  "A suit against a government officer in his official capacity is the same as a suit against the entity which the officer is an agent and a victory in such an official capacity suit imposes liability on the entity that the officer represents."  McMillan v. Monroe County, Alabama, 520 U.S. 781, 785 n. 2, 117 S. Ct. 1734 (1997) (internal citations, brackets, and quotations omitted).  As local

13

government units may be sued directly for damages and injunctive or declaratory relief, there is no need to also sue the individual.  <u>Kentucky</u>, 473 U.S. at 167 n. 14 (<u>citing</u> <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018 (1978)); <u>see</u> <u>also</u> <u>Wong v. City and County of Honolulu</u>, 333 F. Supp. 2d 942, 947 (D. Haw. 2004); <u>Carnell v. Grimm</u>, 872 F. Supp. 746, 752 (D. Haw. 1994).

Here, Plaintiff's claims against the City and Chang are identical.  The City may be liable for damages and declaratory or injunctive relief.  If Chang were found liable in his official capacity, the City would be the entity bearing the responsibility for such liability.  Plaintiff's citation to <u>Will v. Michigan Dept. of State Police</u>, confirms that even a suit brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against an individual in his official capacity is no different than a suit against the state itself.  491 U.S. 58, 71, 109 S. Ct. 2304 (1989) (holding that the Eleventh Amendment bars Section 1983 suits against both state officials sued in their official capacities and states).

Finally, at the October 30, 2006 hearing, Plaintiff's counsel conceded that Defendant Chang should be dismissed from the case.  For all of these reasons, the Court GRANTS Defendant Chang's Motion for Judgment on the Pleadings.  As a result, all claims against Chang are dismissed.  The Court now turns to the pending motions for summary judgment on the Counts 1, 4, and 5

against the City.

## II.  **Count 1 - Due Process**

        Both Plaintiff and the City move this Court to grant
summary judgment in their favor on Count 1.  Count 1 arises out
of Plaintiff's claims that he was denied due process when he was
terminated, a right he believes to be guaranteed by the Fifth and
Fourteenth Amendments of the United States Constitution and
actionable under Section 1983.  Complaint ¶ 29.  Specifically,
Plaintiff contends that he was denied an appropriate pre-
termination hearing, post-termination hearing, and an impartial
decisionmaker.  The City argues that it complied with the pre-
termination and post-termination procedures outlined in the CBA
and did not violate Plaintiff's due process rights.  Plaintiff's
Motion Opposition at 8.

        "No person shall be . . . deprived of life, liberty, or
property, without due process of law . . . ."  U.S. CONST. amend.
V.  When an individual asserts a claim for deprivation of due
process, the court must consider "[f]irst whether his interest
here being asserted rises to the level of a 'property' or
'liberty' interest, . . . , then [it] must weigh the competing
interests of the individual and the [government unit] to
determine what process is constitutionally required."  Stretten
v. Wadsworth Veterans Hospital, 537 F.2d 361, 365 (9th Cir.
1976).  "Due process is flexible and calls for such procedural

protections as the particular situation demands." Armstrong v.
Meyers, 964 F.2d 948, 950 (9th Cir. 1992) (citing Mathews v.
Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893 (1976)).

The most fundamental requirement of due process is that
the person deprived of his property have a hearing "at a
meaningful time and in a meaningful manner." Brewster v. Board
of Education of the Lynwood Unified School District, 149 F.3d
971, 984 (9th Cir. 1998) (citing Armstrong v. Manzo, 380 U.S.
545, 552, 85 S. Ct. 1187 (1965)).  This hearing must take place
before an individual is deprived of his property interest.
Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 542, 105
S. Ct. 1487 (1985) (citing Boddie v. Connecticut, 401 U.S. 371,
379, 91 S. Ct. 780 (1971)).

## A.    Pre-Termination

First, there is no dispute between the parties that
Plaintiff has a constitutionally protected property interest in
maintaining his employment with the City.  Courts recognize the
great significance of the private interest in retaining
employment and the related severity of losing the ability to
provide for oneself.  See Loudermill, 470 U.S. at 543.  It is
clear that the City terminated Plaintiff from his position as a
groundskeeper.[7]  Therefore, the dispositive question before this

_____

[7] Plaintiff also asserts that he has a protected liberty
interest at stake as Defendant's conduct harmed his reputation,
(continued...)

Court is whether the City provided the required due process protections when it deprived Plaintiff of his property and liberty interests.

In the public employment context, the due process clause requires "some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Loudermill, 470 U.S. at 542; see also Lum v. City and County of Honolulu, 963 F.2d 1167, 1170 (9th Cir. 1992) (affirming that the defendant's failure to provide a pre-termination hearing violates the right to due process).[8] However, "[t]he pre-termination hearing, though necessary, need

---

[7](...continued)
honor, or integrity. Complaint ¶ 30. An individual's liberty interest may be impaired by a charge against his reputation if the accuracy of a charge is contested, the charge is publicly disclosed, and the charge is made in connection with termination. Vanelli v. Reynolds School District No. 7, 667 F.2d 773, 777-78 (9th Cir. 1982). Without determining it to be the case, the Court assumes Plaintiff's underlying liberty interest is also at stake for the purposes of this Order, as the assessment of his due process rights will be the same whether one or more than one Fifth Amendment right is implicated.

[8] Plaintiff suggested in oral argument on October 30, 2006 that this Court's underlying decisions in Lum guarantee additional pre-termination hearing rights beyond those endorsed by the Ninth Circuit. After reviewing both Lum v. City and County of Honolulu, 690 F. Supp. 914 (D. Haw. 1988), and Lum v. City and County of Honolulu, 728 F. Supp. 1452 (D. Haw. 1989), the Court finds no evidence to support such an assertion. The two decisions address whether arbitration is an adequate forum to resolve Title VII claims, and not the required elements of a pre-termination hearing. Furthermore, the Ninth Circuit's affirmation of this Court's ruling that the plaintiff was not afforded a proper pre-termination hearing does not address the requirements for a pre-termination hearing. 963 F.2d 1167.

not be elaborate." Loudermill, 470 U.S. at 545.  The Supreme Court explained "the pre-termination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions - essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46 (citing Bell v. Burson, 402 U.S. 535, 540, 91 S. Ct. 1586 (1971)).  Thus, the employee is entitled to written or oral notice of the allegations against him and the opportunity to explain himself.  Loudermill, 470 U.S. at 546.

In the present case, Plaintiff first received written notification of the charges against him in a memorandum from Mike Smith, the Kapiolani Regional Park Manager, in February 2005.  He then appeared for an investigatory interview on March 8, 2005. As a result of that meeting, Plaintiff was notified in writing that he was being temporarily reassigned pending the outcome of an investigation.

Plaintiff asserts that these communications failed to provide notice of the specific charges or the severity of the charges prior to termination.  However, on May 4, 2005, Director Chang sent a letter to Plaintiff documenting the specific charges against him, including shouting "Shut-up!" and intentionally bumping into an employee, and providing an opportunity to respond to the accusations either in writing or at a meeting.

Plaintiff's Motion, Ex. 4.  Chang's letter also highlighted the severity of the charges by warning Plaintiff that if he did not respond, then the City would proceed with a dismissal action. <u>Id.</u>

Next, a pre-determination hearing[9] was convened on May 13, 2005, and Plaintiff was given the opportunity to explain his side of the story.  <u>See</u> Plaintiff's Motion, Ex. 5.  Three days later, Plaintiff received written notice that the explanation he offered at the pre-determination hearing was insufficient to express extenuation or mitigation.  <u>Id.</u>  Consequently, the City placed Plaintiff on leave without pay as of May 23, 2005, and discharged him effective June 1, 2005.  <u>Id.</u>

Contrary to Plaintiff's contentions, the City's pre-termination conduct is wholly consistent with the due process requirements detailed by the Supreme Court.[10]  The Court finds

---

[9] The Court notes that the City refers to the hearing as a "pre-determination hearing" as opposed to a "pre-termination hearing," although the terms appear to be interchangeable.  As stated, Plaintiff was on notice prior to the pre-determination hearing that he could be dismissed for the charges that were levied against him.  <u>See</u> Plaintiff' Motion, Ex. 4.

[10] Plaintiff's reliance on <u>Vanelli</u>, 667 F.2d at 778, and <u>Jones v. Los Angeles Community College Dist.</u>, 702 F.2d 203, 206-07 (9th Cir. 1983), is appropriate to illustrate the necessity of a meaningful pre-termination hearing.  However, the Ninth Circuit found that the plaintiffs in both <u>Vanelli</u> and <u>Jones</u> were denied their constitutional due process rights because the respective defendants failed to offer meaningful pre-termination hearings. Here, Plaintiff was availed of an opportunity for a pre-termination hearing in accordance with the established law.

that the City provided ample notice to Plaintiff regarding the basis for his termination and the severity of the charges, and then conducted an appropriate pre-termination hearing, where he was afforded the chance to explain his version of the events.

Plaintiff focuses on the City's alleged failure to provide the opportunity to confront his accuser, cross-examine witnesses, or have an attorney present at the hearings. Complaint ¶¶ 13-18; Plaintiff's Motion at 9-10.  However, the law requires "something less than a full evidentiary hearing," and does not ensure such rights in pre-termination hearings. Loudermill, 470 U.S. at 545; see also Cross v. Multnomah County Sherriff's Office, 118 Fed. Appx. 303, 304 (9th Cir. 2005) ("There is no requirement that an employee be afforded an opportunity to confront opposing witnesses and cross-examine them under oath.").[11]  A full adversarial evidentiary pre-termination hearing is required before depriving someone of property in very narrow circumstances, which do not include employment cases. Loudermill, 470 U.S. at 545; cf. Goldberg v. Kelly, 397 U.S. 254, 264, 90 S. Ct. 1011 (1970) (requiring a full evidentiary hearing in the context of eliminating welfare benefits); see also Eldridge, 424 U.S. at 349 (holding that an evidentiary hearing is not required prior to the termination of social security

---

[11] The Court is not relying on this unpublished opinion pursuant to U.S. Ct. of App. 9th Cir. Rule 36-3, although the Court does find the opinion to be illustrative.

disability benefits).

Simply put, the Court finds that the City conducted an appropriate pre-termination hearing for Plaintiff with proper notice and an opportunity to defend himself.  The case law is clear that the additional protections sought by Plaintiff are not required.  In conclusion, the Court finds no pre-termination violation of Plaintiff's due process rights, and turns its attention to the post-termination procedures.

**B.    Post-Termination**

The Ninth Circuit recognized that a public employer may meet its constitutional obligation to provide due process through grievance procedures that are established in a collective bargaining agreement.  <u>Meyers</u>, 964 F.2d at 950.  However, the procedures must still satisfy due process, which requires an analysis of the relevant private and government interests. <u>Eldridge</u>, 424 U.S. at 335.  There are three relevant factors to this analysis:

> [f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id.</u>; <u>Meyers</u>, 964 F.2d at 950.

As previously stated, Plaintiff's property interest in

21

continued employment is protected by the Fourteenth Amendment.
See id. (citing Loudermill, 470 U.S. at 538-39).  The Court
concludes and the City does not dispute that Plaintiff's interest
in his employment is substantial.  However, as the Ninth Circuit
concluded in Meyers, in evaluating a substantially similar
grievance/arbitration procedure to the present case, the latter
two factors weigh in favor of a conclusion that the government
provided due process to Plaintiff.  964 F.2d at 950-952.

     In Meyers, the plaintiff received notice of and the
reasons for his potential termination from his employer, the
University of California at Los Angeles ("UCLA"), in addition to
an opportunity to respond.  Id. at 948.  Unpersuaded by the
plaintiff's proffered explanation for his conduct, UCLA fired
him.  Id.  At this point, a grievance/arbitration process was
commenced.  Pursuant to the governing collective bargaining
agreement in Meyers, when a Step 1 Grievance is submitted, the
employee's supervisor reviews the complaint and responds in
writing.  At Step 2, the employee presents his grievance to a
higher ranking UCLA official, who must discuss the complaint with
the employee and his representative.  Then, at Step 3, UCLA's
Assistant Vice President for Labor Relations, or his designee,
reviews the grievance and issues a written statement.

     After these three steps were completed, the union
decided that the plaintiff's claim was without merit and elected

not to pursue arbitration.  Id.  While the union informed the

plaintiff that he had the right to pursue arbitration at his own

expense, the court equated that offer with an outright refusal to

further pursue arbitration.[12]  Id. at 950 n. 2.  To summarize the

post-termination phase of the Meyers plaintiff's review process:

three individuals reviewed the grievance and he appeared in

person one time to present his side of the story.  Id. at 950.

         In considering whether this process afforded the

plaintiff his due process rights, the Ninth Circuit acknowledged

that "grievance/arbitration procedures are universally accepted

method[s] of resolving employment disputes."  Id. at 950.

Moreover, "there is a strong public and private interest in

maintaining an effective grievance/arbitration process to settle

disputes between employers and employees."  Id. at 951.  The

court also noted that allowing a union to control the grievance

process supports the "settlement machinery" of a collective

bargaining agreement and leads to the creation of normative "law

of the plant."  Id.  Accordingly, the court held that the

plaintiff's due process rights were upheld in the grievance/

---

        [12] Plaintiff contends that because the Meyers plaintiff
could have pursued arbitration at his own expense, the case is
inapposite to matter before this Court.  City's Motion Opposition
at 2-3.  However, since the Meyers plaintiff could not afford to
pay for his own arbitration, the Ninth Circuit considered the
offer to be irrelevant to its analysis, making the present case
indistinguishable from Meyers on that point.  946 F.2d at 950 n.
2.

arbitration procedure defined in the collective bargaining agreement.

The precedent established in <u>Meyers</u> dictates that this Court find that a substantially similar grievance/arbitration model utilized by the Union and the City survives Plaintiff's constitutional challenge.  The CBA contains a detailed grievance procedure governing complaints by an employee or the Union alleging that the employer violated, misinterpreted, or misapplied the terms of the CBA.  <u>See</u> Plaintiff's Motion, Ex. 9 at 16-18 (CBA at §§ 15.10 - 15.22).  The formal grievance procedure contained in the CBA comprises three steps: a Step 1 Grievance; a Step 2 Grievance; and a Step 3 Arbitration, available when the grievance is not resolved in Step 2 and the Union desires to submit the grievance to arbitration.[13]  <u>Id.</u> After he was terminated, Plaintiff submitted two grievances, appeared at two hearings, and was denied on both occasions. Finally, the Union completed a "review of the entire matter" and notified Plaintiff that it would not pursue arbitration. Plaintiff's Motion, Exhibit 8.

Again, as in the pre-termination phase, Plaintiff

---

[13] Section 15.16 of the CBA states, "[in] the event the grievance is not resolved in Step 2, *and the Union desires* to submit the grievance to arbitration, the Union shall notify the Employer within thirty (30) calendar days after receipt of the Step 2 decision.  Plaintiff's Motion, Ex. 9 at 17 (emphasis added).

argues that he was entitled to confront his accuser and cross-examine witnesses.  However, the Meyers court upheld a post-termination grievance/arbitration procedure in which the plaintiff was foreclosed from such opportunities.  In fact, the court noted that it was not until the arbitration phase of the process, which was never implemented, that the employee would have had the opportunity to "call and cross-examine witnesses." Id. at 949.

Plaintiff again relies on Vanelli for additional support of his claim because that plaintiff was given the opportunity to rebut evidence against him, cross-examine witnesses, and have his attorney present at the post-termination hearing.  667 F.2d at 780.  However, the Ninth Circuit explicitly stated that it did "not reach the question whether under these circumstances there is necessarily a right to cross-examine complaining witnesses." Id. at 780 n. 11.  Plaintiff offers no subsequent precedent where a court mandated such rights as part of the post-termination due process protections.

Finally, as the Ninth Circuit stated, "[p]ost-termination hearings that satisfy the Mathews v. Eldridge test allow former state employees to assert their rights while still protecting the public interest in efficient and decisive public administration." Belnap v. Chang, 707 F.2d 1100, 1103 (9th Cir. 1983).  The Meyers court found that a grievance/arbitration

25

process that ultimately did not allow the employee to confront his accuser or cross-examine witnesses satisfied the Mathews v. Eldridge test.  The process implemented in this case is substantially similar to that used in Meyers, and even provided plaintiff one additional opportunity to present his arguments in person.  For these reasons, in accordance with the precedent established in Meyers, the Court finds that the City utilized a post-termination grievance/arbitration process, as outlined in the CBA, that conforms with the due process guarantees of the United States Constitution.

## C.   Impartial Decisionmaker

Failure to provide an impartial decisionmaker at the pre-termination and post-terminations stages of the termination process can lead to due process liability.  Walker v. City of Berkeley, 951 F.2d 182, 184 (9th Cir. 1991).  "In attempting to make out a claim of unconstitutional bias, a plaintiff must 'overcome a presumption of honesty and integrity' on the part of decisionmakers." Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456 (1975)).  The Walker court found a violation of due process because the exact same person, a staff attorney for the defendant City of Berkeley, was simultaneously litigating the case on behalf of the city in federal court and acting as a decisionmaker in the plaintiff's post-termination hearing.  Id.  The court

26

recognized the inherent conflict in the staff attorney's dual roles, and ruled that the plaintiff was deprived of his right to an impartial decisionmaker.  Id. at 185.

Plaintiff asserts that his due process rights were similarly violated, alleging that Defendant failed to provide an impartial decisionmaker at either stage of his termination proceedings.  Plaintiff's pre-termination hearing took place before Gary Cabato, an Executive Assistant II for the Department of Parks and Recreation.  Plaintiff's Motion, Ex. 5.  The post-termination Step 1 Grievance hearing was presided over by John J. Blewitt, Jr., an Administrative Services Officer III in the Department of Parks and Recreation.  Plaintiff's Motion, Ex. 6. Finally, after the Step 2 Grievance hearing, Ken Nakamatsu, the Director of Human Resources for the City, made the final decision that no violation of the CBA occurred.  Plaintiff's Motion, Ex. 7.

Plaintiff had three opportunities to present his case in front of three different administrative officers either before or after his termination.  There is no evidence that any of the decisionmakers had a biased dual role as in Walker.  While each decisionmaker is an employee of the City, that alone is insufficient to demonstrate bias.  See Vanelli, 667 F.2d at 780 n. 10 (holding that members of the defendant school board could participate in both the termination decision and subsequent

27

hearing to review the termination decision); <u>Cross</u>, 118 Fed. Appx. at 304 (ruling that the sherriff, the employee from the defendant sherriff's office responsible for enforcing County workplace rules, could also participate in the pre-termination hearing).

Furthermore, no specific evidence has been presented that any of the decisionmakers were biased against Plaintiff. In addition, Ken Nakamatsu operates out of the Department of Human Resources, not the Department of Parks and Recreation, providing an additional guarantee that he could impartially review the case. As Plaintiff has provided absolutely no evidence to overcome the presumption of the decisionmakers' honesty and integrity, the Court again concludes that the City did not infringe upon Plaintiff's due process rights.

For all of the above reasons, and finding no violations of Plaintiff's due process rights, the Court GRANTS Defendant City's Motion for Partial Summary Judgment in its favor on Count 1. Consequently, the Court also DENIES Plaintiff's Renewed Motion for Partial Summary Judgment as it pertains to Count 1.

## III. <u>Count 4 - Breach of Express Contract</u>

Under Hawaii state law, when a union, possessing the sole power to do so, declines to fully exhaust the grievance process, an employee may have grounds to sue the employer for breach of the collective bargaining agreement. <u>Poe v. Hawaii</u>

Labor Relations Board, 105 Haw. 97, 102 (2004).  However, in
order to prevail against the employer, even if he elects not to
sue the union, the plaintiff must prove (1) that the discharge
was in violation of the contract, and (2) that the union breached
its duty to the employee in fulfilling its obligations to fully
pursue the grievance.  Id. (citing Vaca v. Sines, 386 U.S. 171,
186, 87 S. Ct. 903 (1967) ("we think the wrongfully discharged
employee may bring an action against his employer in the face of
a defense based upon the failure to exhaust contractual remedies,
provided the employee can prove that the union as bargaining
agent breached its duty of fair representation in its handling of
the employee's grievance."))

     The Union is a not a defendant in this case.  Plaintiff
could sue the Union for a breach of duty if he believes that its
decision to refuse to pursue arbitration is "arbitrary,
discriminatory, or in bad faith."  See Meyers, 964 F.2d at 950;
Poe, 105 Haw. at 102.  However, Plaintiff's counsel stated in the
October 30, 2006 hearing that there is insufficient evidence to
support a claim against the Union for breach of duty of fair
representation.  Based on Plaintiff's representation to the Court
that there is no evidence that the Union acted in "bad faith" and
breached its duty of fair representation, the Court is inclined
to dismiss Count 4.  However, in the absence of any motion by the
City to do so, the Court simply concludes that Plaintiff has

failed to prove his state law claim for breach of an express contract against the City.   Accordingly, the Court DENIES Plaintiff's Renewed Motion for Partial Summary Judgment as to Count 4.

**IV.   Count 5 - Breach of Implied Contract**

In the alternative to the Court finding a breach of the CBA, Plaintiff moves the Court to grant summary judgment for breach of an implied employment contract.   As a basis for his claim, he relies on Kinoshita v. Canadian Pacific Airlines, Ltd., 68 Haw. 594 (1986).[14]   In Kinoshita, the court held that in situations where no employment agreement or collective bargaining agreement exists, an employer cannot selectively abide by an employment manual that encourages reliance by its employees.   Id. at 602-03.   In essence, the court recognized that in some cases a contractual relationship could arise between employers and employees without an express agreement.

First, the Kinoshita decision protected employees who did not have a formal agreement with the employer.   Id. at 600. Here, there is no dispute that Plaintiff's employment was governed by an express CBA.   Furthermore, Plaintiff has presented

---

[14] The Kinoshita decision upends the City's argument that a breach of an implied contract claim also hinges upon the Union's breach of duty.   It is primarily in cases where employees are not union members and are not protected by collective bargaining agreements that a breach of an implied contract may arise.   68 Haw. at 600.

no evidence of promises or guarantees made outside of the CBA upon which he relied.  In fact, somewhat contradictorily, Plaintiff claims that Defendants "breached their implied contract . . . in violation of the clear provisions of the CBA . . . ." Plaintiff's Motion at 18.  Accordingly, the Court also DENIES Plaintiff's Renewed Motion for Partial Summary Judgment as to Count 5.

## CONCLUSION

For the foregoing reasons, the Court: (1) GRANTS Defendant Lester Chang's Motion for Judgment on the Pleadings; (2) GRANTS Defendant City and County of Honolulu's Motion for Partial Summary Judgment on Count 1; and (3) DENIES Plaintiff's Renewed Motion for Partial Summary Judgment on Counts 1, 4, and 5.  Neither Plaintiff nor the City moves for summary judgment on Counts 2 and 3, therefore the Court need not address those claims at this time.

First, the Court enters judgment for Defendant Chang, sued only in his official capacity as the Director of the Department of Parks and Recreation for the City and County of Honolulu, on all claims.  As the City may be sued directly for damages and injunctive or declaratory relief, there is no need to also sue the individual in his official capacity.

Next, the Court grants the City's Motion for Partial Summary Judgment as to Count 1 - Due Process.  The Court finds

31

that the City provided adequate, impartial pre-termination and post-termination hearings, consistent with the due process requirements of the United States Constitution.  The Court finds that no genuine issues of material fact are in dispute as to whether the hearings took place, or whether those hearings met the legal requirements outlined by both the Supreme Court and the Ninth Circuit.  Consequently, the Court also denies Plaintiff's Renewed Motion for Partial Summary Judgment as to Count 1.

Finally, the Court denies Plaintiff's Renewed Motion for Partial Summary Judgment as to Count 4 - Breach of Express Contract and Count 5 - Breach of Implied Contract.  The Court is inclined to dismiss Count 4 in light of Plaintiff's admission that there is no evidence that the Union breached its duty in failing to pursue arbitration, but will not do so in the absence of such a motion from the City.  Plaintiff also neglected to provide evidence that an implied contract was created or breached.

The effect of this Order is that Counts 2, 3, 4, and 5 remain viable only against Defendant City and County of Honolulu. All other claims are dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 2, 2006.



Alan C. Kay
Sr. United States District Judge